# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

James E. Bates,

                    Plaintiff

v.

Las Vegas Metropolitan Police
Department, et al.,

                    Defendants

Case No. 2:22-cv-00957-CDS-EJY

**Order Denying Plaintiff's Motion for Summary Judgment, Granting in Part Defendants' Motion for Summary Judgment, Granting Plaintiff's Motion to Introduce Evidence, and Denying Plaintiff's Motion for a Continuance or Extension of Time**

[ECF Nos. 94, 101, 104, 107]

This is a civil rights action brought by pro se plaintiff James E. Bates against the Las Vegas Metropolitan Police Department and several of its officers. *See* Third am. compl., ECF No. 62. Specifically, Bates brings four claims: (1) an excessive force claim against Sgt. Perry, and Dets. Ivie, O'Halloran, and Faller, in violation of 42 U.S.C. § 1983; (2) an excessive force claim under Article I, Section 18 of Nevada's Constitution; (3) a state law battery claim against Sgt. Perry, and Dets. Ivie, O'Halloran, and Faller; and (4) a state law negligence claim against Sgt. Perry, and Dets. Ivie, O'Halloran, and Faller. *See id.* There are four outstanding motions: (1) Bates's motion for summary judgment, ECF No. 94; (2) the defendants' motion for summary judgment, ECF No. 104; (3) Bates's motion to introduce evidence,[1] ECF No. 101; and (4) Bates's motion for a continuance or extension of time to file a summary judgment motion.[2] ECF No. 107. Bates filed a

---

[1] Bates moves to introduce medical records to support his claim that he suffered back injuries as a result of the arrest at issue in this case. ECF No. 101. That motion is granted.

[2] Bates had already filed a summary judgment motion at the time he filed this motion. The court recognizes that he is incarcerated and pro se, but this is insufficient to establish good cause for a delayed motion. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (explaining that the good cause standard primarily considers the diligence of the party filing the untimely motion.).  This is particularly true given that Bates had until October 25, 2025, to withdraw his summary judgment motion and refile if he elected to do so, *see* ECF No. 96 at 3, but he failed to do so, and then filed this untimely motion on November 12, 2025. ECF No. 107. Consequently, this motion is denied.

response to the defendants' summary judgment motion, but did not file a reply to his motion. Resp., ECF Nos. 108, 109.[3]  The defendants filed a reply to their motion. Reply, ECF No. 110. For the following reasons, I deny Bates's motion for summary judgment and grant the defendants' motion for summary judgment as to claims one and two. Finally, I dismiss claims three and four without prejudice.

**I.      Legal standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

---

[3] The court notes that Bates inappropriately filed two oppositions to the defendants' motion. ECF Nos. 108, 109. The rules allow for *a* response, not multiple responses. *See* Local Rule 7-2 (discussing the timeline for filing a response and a reply to the response). While the court could strike one of the filings, given Bates is appearing pro se, I decline to do so at this time. However, ECF No. 108 inappropriately includes motions for discovery. Local Rule IC 2-2(b) states that "[f]or each type of relief requested or purpose of the document, a separate document must be filed and a separate event must be selected for that document." LR IC 2-2(b). Bates violated this rule by including these requests. Accordingly, these requests are denied and not considered by the court. The court notes that even if they had been properly docketed, the request would have been denied because discovery closed on September 12, 2025, after it was extended. *See* Order, ECF No. 96. In that order, Bates was also given the opportunity to withdraw and refile his motion for summary judgment by October 25, 2025. *Id.* at 3. Bates did not withdraw his motion and refile in accordance with that deadline.

Summary judgment proceeds in a burden-shifting step analysis. The burden starts with the moving party. A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, and other evidence which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden of showing the absence of a material and triable issue of fact, the burden then shifts to the opposing party, who must present significant probative evidence tending to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018). When resolving motions for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air; rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of Am.*, 285 F.3d 764 (9th Cir. 2002).

Finally, where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each **cross**-motion separately, the court must review the evidence submitted in support of each **cross**-motion." *Id.*

## II.    Background

The parties do not dispute that Bates was arrested by Las Vegas Metropolitan Police Department (LVMPD) law enforcement officers on August 21, 2020, at a Family Dollar store in Las Vegas, Nevada.[4] *See* ECF No. 62 at 3–4; ECF No. 104 at 11. The parties also do not dispute that at the time of that arrest, Bates was a suspect in a non-fatal shooting and was wanted on various warrants. ECF No. 62 at 3, ¶ 10; 2020 Decl. of Arrest Report, Defs.' Ex. D, ECF No. 104-5 at 2 (arrest report noting Bates had active warrants for felony coercion with force and misdemeanor domestic violence); Lt. Nakhlas' Use of Force Investigation, Defs.' Ex. G, ECF No. 104-8 (use of force report stating Bates was wanted at the time of his arrest for a murder parole violation, coercion with force, assault with a deadly weapon (firearm 3 counts), discharging a firearm from an occupied vehicle, prohibited person in possession of a firearm, and trafficking in methamphetamine over 400 grams); Aff. for Order and Search Warrant, Defs'. Ex. H, ECF No. 104-9 at 9 (search warrant affidavit identifying Bates as a fugitive and wanted for a parole violation). Finally, the parties do not dispute that at the time he was arrested, LVMPD officers deployed a taser, which struck Bates in his back. ECF No. 62 at 3, ¶ 16; ECF No. 104-8 (use of force report discussing "deployment of electronic deployment device" (ECD)); ECD Log, Defs.' Ex. K, ECF No. 104-12 (ECD deployment log for August 21, 2020); Bates Dep., Defs.' Ex. M, ECF No. 104-14 at 32–33; 38–39 (discussing his arrest, the tasering, and what happened after he was tased); *see also* Surveillance Video, Defs.' Ex. J, ECF No. 105.

The parties do dispute: (1) whether use of the taser constitutes excessive force; (2) how many times the taser was deployed; (3) whether the LVMPD's officers' actions on the day Bates was arrested constitute violations of Nevada's battery and negligence laws; (4) whether Bates was a considered a threat to law enforcement on the day of his arrest; (5) what injuries, if any,

---

[4] Only the defendants submitted video surveillance footage of the arrest from the Family Dollar store. *See* Family Dollar Surveillance Video, Defs.' Ex. J, ECF No. 105 (manual filing). The court notes that any citation to time stamps herein refers to the timestamps on the actual surveillance video, not the player.

were sustained during Bates's August 21, 2020 arrest; and (6) if Bates did sustain injuries, the extent of those injuries.

### III.    Discussion

Bates brings a § 1983 and related claims, against the defendants, claiming they violated his Fourth Amendment rights by using excessive force against him during an arrest. *See* ECF No. 62. Broadly construing his motion, Bates argues that he is entitled to summary judgment on his excessive force claims because the defendants tased him without giving him a command to comply with the arrest or any other warning. *See* ECF No. 94. While he did not bring a conspiracy claim against the defendants, Bates nonetheless also argues that the defendants conspired to intentionally injure him by deploying the taser on him not once, but twice.[5] *Id.* at 3. As it relates to the second taser deployment, Bates asserts he was tased when he was "lying compliant, prone, and face down, showing no signs of resistance." *Id.* at 5. He also makes unsupported allegations of missing discovery but does not specifically identify what is allegedly missing or why he believes it exists. *Id.* at 2–3.

---

[5] Bates maintains that the officers tased him twice. *See* ECF No. 94 at 5; *see also* ECF No. 104-14 at 84 ("They're all around me to tase me another time" and "you can plainly see that there's another stream of dark that goes on my back, the lower-back part, so...."); *id.* at 69–75 (Bates disputing the surveillance video during his deposition and alleging part of it has been "cut" or that it is "skipping"). Despite testifying in his deposition that he had video showing he was tased a second time, *see id.* at 81, he failed to supply a copy of his video to the court for consideration. Stated otherwise, Bates offers no evidence to support his allegations of a second tasing. The taser report shows two trigger activations less than half a second apart. *See* ECF No. 104-12. The surveillance video does not show the taser was re-deployed after Bates was in handcuffs. *See* ECF No. 105. The video does show two blue or white lights appear on Bates's back just before he falls to the ground. *See id.* 14:28:11. Then, a plain-clothed officer takes Bates to the ground (*id.* at 14:28:12–14:28:15). Another plain-clothed officer runs into the camera view to assist the officer who took Bates to the ground, and then a third plain-clothed police officer carrying a taser runs into the screen (*id.*) to assist in arresting Bates. The third officer is seemingly holding the taser in his left hand while Bates is being handcuffed (*id.* at 14:28:30–14:28:47), then standing while still holding the taser in his left hand (*id.* at 14:28:46), then finally placing the taser in some sort of holster or pouch (*id.* at 14:28:48–14:28:48:51). The video also shows that same officer removing a shirt that was covering a vest with the words "POLICE" printed on it (*id.* at 14:28:58–14:29:12). Eventually that officer walks out of the video (*id.* at 14:29:12). Another officer helps Bates get up off the ground (*id.* at 14:29:23–14:29:36), and eventually Bates and the officers walk out of the video and the recording stops.

In opposition to Bates's motion, and in their own motion for summary judgment,[6] the defendants argue that the evidence shows the officers did not use excessive force but rather used force that was reasonable as a matter of law, such that they are entitled to qualified immunity, and that Bates fails to set forth a cognizable claim for negligence under applicable law. *See* Defs.' Opp'n, ECF No. 97; Defs.' MSJ, ECF No. 104. As it relates to the negligence claim, the defendants argue, in the alternative, that they are entitled to discretionary immunity for their decisions leading up to Bates's arrest. ECF No. 104 at 26–28. Perry and Ivie argue that they are entitled to summary judgment because Perry was not present when Bates was arrested, and Ivie did not arrive at the arrest location until after Bates was in custody. Detective O'Halloran argues he is entitled to summary judgment because he was not involved in deploying the taser, that was only Det. Faller. *Id.* at 4.

As a threshold matter, I address Perry, Ivie, and O'Halloran's argument that they are entitled to summary because for lack of personal participation. These defendants correctly assert that for a person acting under color of state law to be liable under § 1983 there must be a showing of personal participation in the alleged rights deprivation. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (requiring personal participation in the alleged constitutional violations); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980) (holding that § 1983 liability must be based on the personal involvement of the defendant). Bates failed to address this argument in his opposition to the defendants' motion for summary judgment. *See* ECF No. 108. Because the evidence shows Perry and Ivie were not personally involved in the arrest and tasing of Bates,[7] they are entitled to summary judgment in their favor for lack of personal participation. But I deny O'Halloran's motion because he was involved in the arrest of Bates, and as alleged (and not

---

[6] Both pleadings lodge the same arguments. *Compare* ECF No. 97, *with* ECF No. 104. Accordingly, and for ease of reading, the court only cites to ECF No. 97.

[7] *See* Defs.' Ex. D (arrest report listing LVMPD personnel involved); CAD Report, Defs.' Ex. E, (Use of Force Report identifying involved employees); ECF No. 104-6; *see also* Ivie Decl., Defs.' Ex. O, ECF No. 104-16.

denied by the defendants), the officers involved in Bates's arrest decided to preemptively use the taser on Bates. I therefore turn to Bates's § 1983 claim against O'Halloran and Faller.

Section 1983 was enacted "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[.]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Section 1983 requires a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989). To prevail, the plaintiff must establish each of the § 1983 elements to prove an infringement of the underlying constitutional or statutory right.

"Claims of excessive and deadly force are analyzed under the Fourth Amendment's reasonableness standard." *Long v. City & County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007) (first citing *Graham v. Connor*, 490 U.S. 386, 395 (1989); and then citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). The court must determine whether the force used by each defendant-officer was "objectively reasonable" as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97 (citations omitted). To properly apply the Fourth Amendment reasonableness test, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The most important factor is whether the suspect posed an immediate threat to the safety of the officers or others." *Thomas v. Dillard*, 818 F.3d 864, 889 (9th Cir. 2016); *S.R. Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019), *cert denied sub nom., Browder v. Nehad.* 141 S. Ct. 235 (2020).

Here, defendants O'Halloran and Faller allege they are entitled to qualified immunity. As such, the court first conducts a two-prong inquiry to determine whether the officers are entitled

to qualified immunity. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009) (stating that the court may conduct the inquiry in any order it prefers); *see also Pearson v. Callahan*, 555 U.S. 223, 226 (2009) (courts have discretion to decide which of the prongs of the qualified-immunity analysis to address first). Under one prong, the court considers whether, "taken in the light most favorable to the [plaintiff], the facts alleged show the officer's conduct violated a constitutional right." *Id.* (quotations omitted). If the answer is "no," the inquiry ends and judgment shall be entered in favor of the defendant, as the plaintiff cannot prevail. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005), *rev'd on other grounds*, *United States v. King*, 687 F.3d 1189 (9th Cir. 2012). But if the answer is "yes," the court continues in its evaluation. The second prong evaluates if "the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [their] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)).

The Ninth Circuit has consistently held that "once the defense of qualified immunity is raised by the defendant, the plaintiff bears the burden of showing that the rights allegedly violated were 'clearly established.'" *Maples v. Pinal County*, 453 F. Supp. 3d 1314 (D. Ariz. 2020). The Supreme Court has repeatedly and recently stressed, however, that the "clearly established" standard requires a high degree of specificity, particularly in excessive force cases. *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) ("Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.") (citation omitted).

The crux of Bates's argument is that the defendants' force was excessive because they tased then arrested him without giving any commands to comply with their attempt to arrest him. *See* ECF No. 94.[8] As the plaintiff in this action, Bates's position is reasonable. But to

---

[8] For the first time in his summary judgment motion, Bates alleges that the defendants used excessive force by placing him in a chokehold. ECF No. 94 at 4. A plaintiff cannot raise a new theory for the first time in opposition to summary judgment. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000) (plaintiff could not proceed with new theory not pled in complaint); *Wasco Products, Inc. v. Southwall*

properly resolve the cross-motions for summary judgment, the court must evaluate the factors set forth in *Graham v. Connor*—namely the facts and circumstances of his case, including the severity of the crimes he was wanted for, and whether he posed an immediate threat to the safety of the officers or others.

At the time of his arrest, the defendants knew Bates was wanted for serious felony offenses, including coercion with force,[9] assault with a deadly weapon (firearm 3 counts), discharging a firearm from an occupied vehicle, prohibited person in possession of a firearm, and trafficking in methamphetamine over 400 grams. *See* ECF No. 104-5 at 2; ECF No. 104-8. Those charges arose from a shooting just two days earlier for which Bates was a suspect. *See* Officer's Report, Defs.' Ex. F, ECF No. 97-6 at 4; *see also* Crisis Negotiation Team Intelligence Report, Defs.' Ex. I, ECF No. 97-9. As detailed in a police report, on August 18, 2020, while law enforcement was following up on the shooting investigation, they located Bates at an apartment, but he had barricaded himself inside. *See* ECF No. 97-6. Defendant Sgt. Perry contacted Bates via cellphone to try and get him to leave an apartment willingly. *Id.* During that phone conversation, Bates made numerous threatening statements, including that "he would shoot it out with police, he wasn't going to back to prison," and that this friend who was barricaded in the apartment with him was also willing to shoot it out with police.[10] *Id.* Eventually, law enforcement obtained

*Techs., Inc.* 435 F.3d 989 (9th Cir. 2006). Accordingly, the court does not address this argument as it cannot form the basis of granting Bates's summary judgment motion. The court notes, however, that Bates fails to identify which defendant allegedly placed him in a chokehold, and further, that the video does not show any of the officers placing Bates in a chokehold. *See* Defs.' Ex. J, ECF No. 105.

[9] I take judicial notice of NRS 207.190, coercion, which makes it unlawful

"for a person, with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, to:
(a)  Use violence or inflict injury upon the other person or any of the other person's family, or upon the other person's property, or threaten such violence or injury;
(b)  Deprive the person of any tool, implement or clothing, or hinder the person in the use thereof; or
(c)  Attempt to intimidate the person by threats or force."

[10] The defendants were also aware of Bates's threatening statements when they arrested him at the Family Dollar. *See* ECF No. 97-3 at 4; ECF No. 97-7 at 2.

a search warrant for the apartment, and LVMPD SWAT was called to assist with the investigation. *Id.* But upon entry no one was located. *Id.*

The defendants were also aware of Bates's lengthy criminal history, which included arrests for robbery with a deadly weapon, willfully aiming a firearm, burglary with a deadly weapon, possession of a deadly weapon, sexual assault with a deadly weapon, home invasion, possession of a sawed-off shotgun, obstructing a police officer, possession of stolen vehicle, and possession of a controlled substance. *See* LVMPD Operational Briefing Sheet, Defs.' Ex. A, ECF No. 97-1; ECF No. 97-9 at 4 (identifying Bates as a six-time felon). They also knew the firearm that had been used in the shooting had not yet been recovered, ECF No. 97-7 at 9, and that Bates was on parole for second degree murder, *id.*; *see also* ECF No. 97-1.

Given Bates's criminal history, including his outstanding warrants for offenses related to a shooting that had just occurred days before his arrest, together with his violent criminal history, firearms possession, verbal threats to shoot it out with police, and clear statements of not returning to prison, I find that the defendants' use of force was reasonable. Given the totality of the circumstances, the defendants were justified in the preemptory use of intermediate force to take Bates into custody, especially given the firearm that was used in the shooting remained outstanding and police thought it could be on Bates's person. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (tasers constitute an "intermediate or medium, though not insignificant, quantum of force."); *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (an officer's use of a taser to subdue a suspect was reasonable even when the suspect had not threatened the officer, committed a serious crime, or appeared to have a weapon).

Bates offers no genuine dispute that, on the date he was arrested, he was wanted for those serious and violent offenses, or that that he was not on parole for murder. Instead, he summarily contends that he "was not a high risk violent fugitive," and avers that he was "later cleared of being the real suspect in the assault with a deadly weapon case." ECF No. 108 at 1. But Bates offers no evidence to support his conclusory argument that he was not a high-risk violent

fugitive at the time, and argument alone is insufficient to overcome summary judgment. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (stating that, when the moving party carries its initial burden on a motion for summary judgment, the nonmoving party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"). Further, Bates's argument that he was later cleared of being the shooting suspect misses the mark. The court is to consider whether the defendants were objectively reasonable from the perspective of officers *at the time*, not based on information obtained after the fact. *See Graham*, 490 U.S. at 396–97. On the other hand, the defendants offer numerous exhibits showing that the defendants had knowledge regarding the severity of the crimes Bates was alleged to have been involved in, his lengthy criminal history, and his threatening statements about getting shot and not returning to prison—all of which demonstrate why they considered Bates an immediate threat to the safety of the officers or others, so the first two *Graham* factors weigh in the defendants' favor.

The third *Graham* factor, however, does not weigh in the defendant's favor because Bates was not resisting at the time the taser was deployed; rather, the defendants covertly approached Bates from behind then preemptively deployed the taser on him. *Compare A.B. v. County of San Diego*, 2020 WL 5847551, *14 (S.D. Cal. Oct. 1, 2020), *aff'd*, 2022 WL 1055558 (9th Cir. Apr. 8, 2022) (the fact that the taser deployment was "reactive and intended to subdue" weighed in favor of summary judgment on excessive force claim), *with Bryan*, 630 F.3d at 822 (taser use was excessive force where the suspect had committed a traffic infraction was "standing twenty to twenty-five feet away and not attempting to flee").

Two of the three *Graham* factors weigh in favor of the defendants. And one of those two factors—the risk Bates posed to the safety of the officers and others—is the most important factor, *see Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). Thus, that factor sharply tips the scale in the defendants' favor. Further, Bates does not cite any case law showing that the defendants violated clearly established law. Instead, he summarily contends that preemptive

tasing "will ALWAYS be unconstitutional." ECF No. 94 at 5. As previously explained, argument alone is insufficient to overcome summary judgment. Moreover, while neither the Supreme Court nor the Ninth Circuit requires a case directly on point to demonstrate that the officers violated a clearly established constitutional right, there must be existing precedent placing the statutory or constitutional question *beyond debate. See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Bates points to none. Given that the "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)), citing authority showing that the defendants' use of the taser to preemptively to address safety concerns for the officers and the public was critical to Bates's motion. Consequently, because the *Graham* factors weigh in the defendants' favor and Bates does not raise a genuine dispute as to any material fact, I find the defendants' use of force to be objectively reasonable.

Thus, taken in the light most favorable to Bates, and after balancing the totality of the circumstances, together with balancing the force used against the need for such force to determine whether the force used was "greater than reasonable under the circumstances," *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir 2010)), the court finds that the defendants' conduct here was not patently offensive of Bates's constitutional rights. As a result, the defendants are entitled to qualified immunity, so I deny Bates's motion for summary judgment and grant the defendants' motion on the § 1983 claim.[11]

Finally, having granted defendants O'Halloran and Faller's summary judgment motion with respect to Bates's § 1983 and Fourteenth Amendment claims, the court lacks original jurisdiction over the remaining state law claims of battery and negligence. Under 28 U.S.C.

---

[11] Applying the same reasoning, the defendants are entitled to summary judgment on claim two, the alleged violation of under Article I, Section 18 of Nevada's Constitution. *See Mack v. Williams*, 522 P.3d 434, 442 (Nev. 2022) (describing the "Fourth Amendment to the U.S. Constitution [as] substantively identical to Article 1, Section 18 of the Nevada Constitution[.]") (citation omitted). Accordingly, defendants' motion for summary judgment on claim two is granted.

§ 1367(c), a district "may decline to exercise supplemental jurisdiction" *inter alia* where "the district court has dismissed all claims over which it has original jurisdiction." Typically, "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." *Religious Tech. Ctr v. Wollersheim*, 971 F.2d 364, 367–68 (9th Cir. 1992). Indeed, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted). Accordingly, the court exercises its discretion and declines to exercise supplemental jurisdiction over the remaining state law claims. *See City of Colton v. Am. Promo. Events, Inc.-W.*, 614 F.3d 998, 1008 (9th Cir. 2010) (holding that district court acted within its discretion in declining to exercise supplemental jurisdiction after granting summary judgment on all federal claims). As a result, claims three and four are dismissed without prejudice.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that Bates's motion for summary judgment [ECF No. 94] is DENIED.

IT IS FURTHER ORDERED that Bates's motion to introduce evidence [ECF No. 101] is GRANTED.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment [ECF NO. 104] is **granted in part** as set forth in this order. Specifically,

- Sgt. Perry and Det. Ivie's motion for summary judgment is granted as to claims one and two for lack of personal participation; and

- Dets. O'Halloran and Faller's motion for summary judgment is granted as to claims one and two because the officers did not use excessive force and are entitled to qualified immunity.

13

IT IS FURTHER ORDERED that the plaintiff's **claims three and four are dismissed without prejudice.**

IT IS FURTHER ORDERED that Bates's motion for continuance or extension of time **[ECF No. 107] is DENIED.**

The Clerk of Court is kindly directed to enter judgment in favor of the defendants on claims one and two, to dismiss claims three and four without prejudice, and to close this case.

Dated: March 23, 2026

_____
Cristina D. Silva
United States District Judge

14